**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW OAKES, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO.   5:11-cv-1006 |
| | ) | JUDGE LIOI |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| v. | ) ) | |
| J.F.BERNARD, INC., *et al.,* | ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | Doc. No. 14 |

This case is before the magistrate judge on referral.  Before the court is the

motion of plaintiff, Matthew Oakes ("Oakes"), to proceed conditionally with this case as

a collective action pursuant to the Fair Labor Standards Act, as amended at 29 U.S.C.

§ 201, *et seq.* ("FLSA").  Doc. No. 14.  Defendants, J.F. Bernard, Inc. ("JF Bernard"),

Joseph Bernard, Jr. ("Bernard"; with JF Bernard, "the Bernard defendants), and

Construction Labor Contractors, Inc. ("CLC") oppose Oakes's motion.  Doc. No. 23.  For

the reasons given below, Oakes's motion should be **GRANTED**.

I

The parties do not dispute the following relevant facts.  JF Bernard is an Ohio

corporation serving as a commercial heating and air conditioning contractor.  Bernard

owns JF Bernard and is a resident of the state of Ohio.  CLC is an Ohio corporation that

leases skilled construction labor to construction contractors.  The Bernard defendants

lease labor from CLC and also hire their own employees.

Oakes began working for CLC on February 19, 2010, and CLC soon leased him to JF Bernard as a heating and air conditioning installer.  Oakes last worked for JF Bernard on April 30, 2010.  Oakes alleges that while he worked for JF Bernard, the Bernard defendants[1] and CLC did not compensate him for travel outside his normal commuting area, for time spent at the shop loading or unloading the truck with materials or picking up supplies, for his travel from the shop to the job site, or for travel between job sites during the work day.  According to Oakes, JF Bernard's policy was to pay workers only for time spent at the job site.  Oakes also alleges that CLC, JF Bernard, and employees of JF Bernard told him that he should not put travel time on his time sheets because JF Bernard did not pay travel time.  Finally, Oakes alleges that other installers also were not paid for their compensable time traveling, loading, unloading, or picking up supplies.

In support of his contention that the failure to pay compensable time was defendants' policy, Oakes provides affidavits from Ronald Gary Roberts ("Roberts") and Richard Schwab ("Schwab").  Roberts and Schwab were heating and air conditioning installers for JF Bernard during all or most of the period that JF Bernard employed Oakes.  Their affidavits assert that they, too, were not paid for travel outside their normal commuting area, time spent at the shop loading or unloading trucks or picking up supplies, or travel between the shop and the job site.  They also allege that this was company policy.

---

[1]  Oakes does not explain his theory of liability as to Bernard.

2

Oakes reported his time and was paid as follows.  Each day that Oakes worked, he wrote down his hours on a time card.  He recorded his hours in compliance with JF Bernard's policies and procedures regarding travel time, time card entries, and shop time.  When the card was completed, it had to be initialed and approved by a JF Bernard employee.  Oakes then submitted his time card to CLC, who paid him and billed JF Bernard for the hours Oakes worked.  According to Oakes, all heating and air conditioning installers employed by CLC and the Bernard defendants were paid in accordance with the same policies and procedures regarding (1) compensable time for traveling, loading, unloading, or picking up supplies; (2) what should be included on a time card; and (3) how such a card was processed.

Oakes now moves to proceed conditionally with this case as a collective action pursuant to the FLSA.  Oakes defines the proposed class for the collective action as follows:

> All current and former employees of Construction Labor Contractors, Inc. who were assigned to J.F. Bernard, Inc. in the HVAC trade as Installers and who were and/or are subject to the following common practices or policies of the Defendants:
> (a) Who worked for J.F. Bernard, Inc. and Construction Labor Contractors, Inc. at any time from three (3) years before the filing of this Complaint to the present; and
> (b) Who were not properly compensated for travel time when required to travel outside their normal commuting area; or
> (c) Who were not properly compensated for travel from the shop to the work site and from the work site to the shop; or
> (d) Who were not properly compensated for travel between worksites during the day; or
> (e) Who were not compensated for activities performed before and after the shift that were integral and dispensable to their principal activities; for example, loading and unloading trucks and materials before and after their scheduled

shifts.[2]

Plaintiffs' Memorandum of Law in Support of Their Motion ("Pl. Memo."), Doc. No. 15, p.

5.  Oakes includes in the proposed class all such employees who worked for the

defendants from May 19, 2008 to the present.

II

Title 29 U.S.C.A. § 216(b) ("§ 216(b)") of the FLSA provides the sole means of

enforcing the FLSA.  Pursuant to § 216(b), employees initiating an action to enforce

provisions of the FLSA may sue alone on their own behalf, or jointly on their own behalf

and on behalf of "similarly situated" persons.  A suit on a plaintiff's own behalf and on

behalf of similarly situated persons is properly called a "collective action."

Section 216(b) establishes two requirements for the formation of a collective

action.  First, the plaintiffs must actually be "similarly situated" to other represented

plaintiffs.  Second, all plaintiffs must signal in writing their affirmative consent to

participate in the action.  *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165,

167-68 (1989).  Unlike class actions, once preliminary approval has been given to form

a collective action, membership in the collectivity of plaintiffs is not automatic.  Similarly

situated persons who wish to join the suit must "opt in" to a collective action.

There is a two-stage process to determine whether plaintiffs are similarly situated

for purposes of a collective action.  The first stage, known as the "notice stage," occurs

---

[2]  This class differs from the class defined in the complaint.  The complaint also included within the class those employees "[w]ho worked more than forty (40) hours per week during at least one week of their employment and were not paid at least one and a half times their regular rate of pay for those hours worked in excess of forty hours per week."  Complaint ¶ 14(b).

at the beginning of discovery.  *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006).  The standard at this stage for determining whether other, similarly-situated plaintiffs might exist is "fairly lenient."  *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004).  The burden is on plaintiffs to submit evidence that establishes "at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists."  *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (quoting *Olivo*, 374 F. Supp. 2d at 548).

To be considered "similarly situated," it is sufficient if the plaintiffs' "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct."  *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009).  "The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members."  *Comer*, 454 F.3d at 546-47 (internal quotation marks and citations omitted).  "[D]istrict courts generally allow the lead plaintiffs to 'show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Wlotkowski*, 267 F.R.D. at 217 (quoting *Olivo*, 374 F. Supp. 2d at 548).  "[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Id.* (quoting *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)).  If a plaintiff succeeds in carrying the burden in the first stage, a district court may then conditionally certify a collective action and authorize the plaintiff to notify other similarly-situated employees so that they

5

may opt into the action.  *Hoffmann-La Roche*, 493 U.S. at 168; *Wlotkowski*, 267 F.R.D. at 217.

The second stage of authorizing a collective action occurs after "all of the opt-in forms have been received and discovery has concluded."  *Comer*, 454 F.3d at 546 (quoting *Goldman v. RadioShack Corp.*, No. 2:03-cv-0032, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 16, 2003)).  At this stage, the court "has much more information on which to base its decision" and "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated."  *Id.* at 547 (citation and internal quotation marks omitted).  Because the court has more information, it applies a "stricter standard" in deciding whether to permanently certify the collective action.  *See id.*  The burden is now on the plaintiff to introduce "substantial evidence" that the opt-in plaintiffs are similarly situated.  *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011).  It is at this stage that a court may consider the "disparate factual and employment settings of the individual plaintiffs" in determining whether plaintiffs are similarly situated.  *Wlotkowski*, 267 F.R.D. at 219 (quoting *White v. MPW Indus. Servs. Inc.,* 236 F.R.D. 363, 373 (E.D. Tenn. 2006)).

Most courts agree that collective actions pursuant to § 216 should not be guided by Rule 23.  *See, e.g.*, *Groshek v. Babcock & Wilcox Tubular Prods. Div.*, 425 F. Supp. 232, 234 (D. Wis. 1977) ("This court has no authority under the FLSA to adopt portions of Rule 23 procedures and apply them to an action brought under the Act.").  This includes requiring the certification of a class as is required by Rule 23.  *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1208 (5th Cir. 1981).  Moreover, particularly at

6

the notice stage of certification, consideration of such factors as commonality, typicality, adequacy of representation, and whether common questions of fact predominate runs counter to Sixth Circuit caselaw on the subject, as the Sixth Circuit has found that contingent certification is appropriate when claims share common theories of defendants' statutory violations even if the proofs of those theories are inevitably individualized and distinct.

Although courts should not be guided by Rule 23 in managing collective actions, courts may impose some requirements not described by the statute on plaintiffs before allowing such actions to proceed. *See Hoffman-LaRoche*, 493 U.S. at 170-71. These additional requirements are necessary because § 216(b) is an "opt-in" collective action, unlike the "opt-out" class action brought pursuant to Rule 23. *See id.* The court's managerial responsibility allows a court, therefore, to impose such requirements on plaintiffs as may be necessary to manage the conduct of a § 216(b) collective action in an efficient way. *See id.* These requirements may include court approval of the notice sent to potential plaintiffs and the imposition of a deadline for potential plaintiffs to join the action. *See id.* at 168-72.

III

Oakes argues that the proposed class should be certified pursuant to § 216(b) because (1) the complaint alleges that all Installers were subjected to the same impermissible company-wide policies of (a) not compensating travel time for required to travel outside an installer's normal commuting area, (b) not compensating travel from the shop to the work site, (c) not compensating travel during the day between work sites, and (d) not compensating work before and after the normal shift; (2) those

7

policies violated the FLSA; and (3) affidavits from Oakes and  former employees

Roberts and Schwab provide evidence that these policies were company-wide within JF

Bernard with the acquiescence of CLC.  Defendants respond that (1) Oakes is not a

proper representative because he is a union organizer, (2) the policy of not

compensating travel to and from the work site does not violate the FLSA, and (3) Oakes

fails to make any factual showing that defendants had a common policy, plan, or

practice not to compensate employees for travel between work sites.  Oakes challenges

the legal basis for each of these assertions.

A.      *Oakes as a proper representative*

Defendants' objections to Oakes as a proper representative of all potential

members of the collective action proceed in two stages.  First, defendants contend that

although Rule 23 requirements do not apply by law to certification of collective actions,

adequacy of representation is an equitable consideration in determining whether to

certify such an action.  In supporting this argument, defendants rely on two district court

cases from the Seventh Circuit, *In re Fedex Ground Package System, Inc.,*

*Employment Practices Litigation*, 662 F. Supp. 2d 1069 (N.D. Ind. 2009), and a case

involving Drenth Trucking,[3] as well as a district court case from within the Sixth Circuit.[4]

_____

[3]  Defendants also cite to "*Hayden v. Drenth Trucking, Inc.*, 1:10 U.S. Dist. LEXIS 63753 (N.D. Ind. June 15, 2011)," which does not appear to be a proper citation.  The intended case may be *Thompson v. Drenth Trucking, Inc.*, No. 1:10-cv-0135, 2011 WL 2446282 (S.D. Ind. June 15, 2011), which includes Mark A. Hayden as one of two proposed class representatives.

[4]  The case *Rotuna v. West Customer Management Group, LLC*, No. 4:09-cv-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010), involves class certification pursuant to Rule 23, not an FLSA collective action.

8

These cases, however, focus on whether the *claims* of the representative plaintiffs are similar to those of the proposed collective class.  In the *Fedex* case, the court denied conditional certification under the FSLA for a fact specific reason, that is, the plaintiffs were inadequate representatives because they did not pursue claims similar to those of the collective class; thus, "they lacked standing to pursue FLSA claims on behalf of the putative class and their interests conflicted with those of the putative class." *Norris-Wilson v. Delta-T Group, Inc.*, No. 09-cv-916, 2010 WL 2196066, at *4 (S.D. Cal. June 1, 2010).   Similarly, in the *Drenth Trucking* case, the court discussed whether the plaintiffs' claims were similar to those of the proposed collective class in the face of an argument that the plaintiffs were subject to the  Motor Carriers Act ("MCA") exemption of the FLSA.  In the *Drenth Trucking* case, the court found that whether the individual plaintiffs were, in fact, exempt, was a fact intensive issue requiring a determination of whether interstate duties were the plaintiffs' "regular duties."  Interestingly, the court *granted* the conditional certification and reasoned that the allegations were sufficient to carry the plaintiffs past the conditional certification stage.[5]

As defendants' argument espousing a requirement of adequacy of representation runs counter to Sixth Circuit case law, that argument is rejected as a consideration in determining whether to conditionally certify the collective action.

Defendants also argue that Oakes is not a proper representative because he is a union employee.  They argue that because the legislative history of amendments to the

---

[5] Put simply, "the Court should not rule on the merits of [the] case until it has a more complete picture of the *nature and character* of Plaintiffs' duties."  *Drenth Trucking*, 2011 WL 2446282, at *3 (emphasis in original).

9

FLSA in 1947 reflect, in part, that the purpose of a collective action was to ban representative actions brought by unions, Oakes cannot be an adequate representative for the proposed collective action.  They cite *Arrington v. National Broadcasting Co., Inc.*, 531 F. Supp. 498, 500 (D.D.C. 1982), in support.

This argument overstates the discussion in *Arrington*.  The court in *Arrington* discussed the predecessor of a collective action, a "representative action,"[6] and stated that the "purpose of the ban on representative actions [in the FSLA] was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit."  *Arrington*, 531 F. Supp. at 501.  The ban was intended to prevent employees from collectively granting a power of attorney to an outsider to act on their behalf and to use the FLSA to

---

[6]  The court in *Arrington* cited to the following comments in the legislative history:

In illustration of this latter category-which category for purposes of identification I call a representative action, as distinguished from a collective action-suppose that every one here present this afternoon were employed by the X steel company, and we all belonged to a labor union, and gave a power of attorney to the district director of the labor union who might live 500 miles away and not be employed at all in the plant in which we were employed. He could file a suit there as a representative of all of us. We would not be in that case at all except as he is our representative. It will be noted, therefore, Mr. President, that in those two classes of cases there is this difference: In the first case, an employee, a man who is working for the X steel company can sue for himself and other employees. We see no objection to that. But the second class of cases, namely, cases in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case, may result in very decidedly unwholesome champertous situations which we think should not be permitted under the law.

*Id.* at 501 (citing 93 Cong. Rec. 4371) (footnote omitted).

preempt the collective bargaining unit.  The ban was "limited solely to prohibiting actual representation by a union."  *Id.* at 503.  The 1947 amendment to the FLSA still allowed collective actions by permitting "employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated."  *Id.* at 501.

In the case at bar, Oakes is an employee and does not seek to represent anyone by virtue of a power of attorney.  He has actual involvement in the lawsuit and has a pecuniary interest in the wages and hours that are the subject of the lawsuit.  The representation is not actually representation by the union.  Moreover, there is no evidence that class counsel will place the interests of the union above the interests of the collective class members.  At this stage of the proceedings, although this court has some concerns, there is insufficient evidence from which this court could conclude that Oakes will promote the interests of the union over the interests of the collective class members.

Defendants also cite *Brooks v. Shaffer*, 759 F. Supp. 1185 (E.D. Va. 1991), to argue that collective actions led by union organizers are problematic.  *Brooks* is inapposite.  The question in *Brooks* was whether an attorney who represented a union should be disqualified from representing members of the union who were part of a collective action.  These are not the issues before this court.  Moreover, as Oakes points out, the Fourth Circuit vacated *Brooks* in *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992).

As defendants' contentions regarding the importation of "adequacy of representation" from Rule 23 run counter to Sixth Circuit caselaw, and as *Arrington* and

11

*Brooks* have no bearing on whether this court should conditionally certify a collective action in the present case, defendants' arguments are not well taken.

B.      *Compensating travel to and from the worksite*

Defendants also argue that the court should not certify the proposed collective action because the FLSA does not require employers to compensate employees for travel to and from the work site, and that plaintiffs must make a "modest factual showing" that they are entitled to relief under the FLSA.  Defendants cite *Olivo v. GMAC Mortgage Corp.,* 374 F. Supp. 2d 545, 549 (E.D. Mich. 2004), in support.  Oakes replies that (1) this issue is not appropriately addressed at the stage of preliminary certification; and (2) although "normal travel" to and from the work site is not compensable under the FLSA, travel beyond "normal travel" *is* compensable pursuant to the FLSA, and this is the claim that Oakes raises.

Whether Oakes is correct that more than "normal travel" to and from the worksite is compensable under the FLSA is not critical to the issue of conditional certification.[7] Oakes has also alleged, and the affidavits produced support the allegation, that JF Bernard failed to pay for work performed before and after regular work hours and for travel between the warehouse and the work site, and that CLC was complicit in this non-payment.  Defendants do not challenge that these alleged acts would violate the FLSA if found to be true.  As at least most of Oakes's claims allege violations of the FLSA, and as the Sixth Circuit does not appear to favor examination of the ultimate

_____

[7]  The merits of this claim are not to be decided in this phase of the inquiry.  At this stage of the proceeding, it is sufficient that the plaintiffs' claims are unified by common theories of defendants' alleged statutory violations.

merits of claims at this stage of conditional certification, Oakes's motion to conditionally certify the action as a collective action should be granted.  Accordingly, defendants' argument is not well-taken.

C.      *Factual showing regarding a common policy, plan, or practice*

Defendants argue that the court should deny the motion to certify because Oakes fails to make any factual showing that defendants had a common policy, plan, or practice not to compensate employees for travel between worksites.  Oakes responds, again, that examination of whether defendants had a common policy, plan, or practice not to compensate employees for travel between worksites is a question that goes to the ultimate merits of the case and is not an appropriate issue when considering conditional certification.  Oakes also contends that he has presented a sufficient factual basis to support his contention that such a policy, plan, or practice existed by way of the affidavits of Roberts and Schwab.

As already discussed, caselaw in the Sixth Circuit requires plaintiffs to establish that potential claimants are similarly situated by making a "modest factual showing" sufficient to demonstrate that the plaintiff and other, potential plaintiffs were victims of a common policy or plan.  The affidavits from Roberts and Schwab are sufficient to make this "modest factual showing."

Defendants proffer time cards and an affidavit to demonstrate that they paid for travel between work sites.  As courts do not resolve issues addressing the ultimate merits and do not weigh credibility at the conditional certification stage, these proffers are not relevant to the issue currently before the court.

In sum, Oakes submits evidence that establishes at least a colorable basis for

13

his claim that a class of similarly situated plaintiffs exists, unified by common theories of defendants' statutory violations.  He has made the requisite "modest factual showing" sufficient to demonstrate that he and other potential plaintiffs together were victims of a common policy or plan that violated the law.  Defendants' objections to conditional certification are without merit.  For these reasons, Oakes's motion for conditional certification should be granted.

IV

For the reasons given above, Oakes's motion to certify the case as a collective action pursuant to § 216(b) should be **GRANTED**.

Defendants ask that, in the event the court approves conditional certification, the court grant the parties two weeks to negotiate the language of the notice.  Oakes does not object to this request.  Accordingly, in the event this Report and Recommendation is adopted and the conditional certification is approved, counsel should be granted 10 days to negotiate the language of the notice.  In addition, after any ruling on this Report and Recommendation, counsel shall promptly contact Wanda Golden, deputy for the chambers of the Magistrate Judge, at 216-357-7130 to request a telephone conference regarding scheduling.


Date:  November 22, 2011            _s/ Nancy A. Vecchiarelli_____
                                    U.S. MAGISTRATE JUDGE


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been**

14

served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.

15